**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TALAYA GREENFIELD, | : |
| Plaintiff, | : Civil No. 16-4366 (AET)(DEA) |
| v. | : |
| | : **OPINION** |
| TRENTON POLICE DEPARTMENT, et. al., | : |
| Defendants. | : |

ARPERT, Magistrate Judge

This matter comes before the Court on a Motion [ECF No. 18] by non-party movant, the Mercer County Prosecutor's Office ("MCPO") to quash Plaintiff Talaya Greenfield's ("Plaintiff") subpoena for the production of materials in connection with a four-year-long criminal investigation. The Court conducted oral argument on the Motion on April 19, 2018. For the reasons set forth below, the MCPO's Motion to quash is denied.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is the mother of Jamer J. Greenfield and serves as the administrator of his Estate, bringing this action against the City of Trenton ("Trenton" or the "City") and the City's Police Department ("TPD") (cumulatively, "Defendants") for allegedly violating his rights under the United States and New Jersey State Constitutions. Complaint ("Compl."), ¶¶ 7-9. The Complaint originally named Mercer County (the "County") and the MCPO as defendants, but the District Court entered an Order dismissing those entities from this action on June 6, 2017. ECF No. 15.

The allegations, as pled in the Complaint, stem from an incident which occurred in the early morning hours of July 19, 2014. Compl., ¶ 18. Specifically, Plaintiff's son was the victim of multiple gunshot wounds, at or near the vicinity of an "after-hours club" located on Rosemont

1

Avenue in Trenton. Compl., ¶¶ 17-18, 21. Moreover, the responding TPD officers who subsequently arrived at the crime scene allegedly failed to provide Mr. Greenfield with the required "proper and immediate medical attention"; instead, he was placed in handcuffs, which "inexplicabl[e]" "acts and/or omissions" possibly contributed to his death. Compl., ¶¶ 22-23.

Although the previously described events prompted the underlying criminal investigation, Defendants have allegedly failed to provide Plaintiff with any information about the death of her son. Compl., ¶¶ 26, 30. Similarly, the MCPO only met with Plaintiff on one occasion which she describes as "meaningless," without ever providing "an explanation as to what happened on July 19, 2014." Compl., ¶¶ 30-31. According to Plaintiff, these circumstances demonstrate the absence of any "serious steps" and the failure to "actually investigate" Mr. Greenfield's murder, whose death occurred over two years before the instant Complaint was filed, and over four years from the date of this Opinion. Compl., ¶ 24.

The alleged manner in which the TPD officers treated Mr. Greenfield and the ensuing murder investigation prompted Plaintiff to file the instant five-count Complaint, wherein she includes claims for wrongful death and survivorship. Compl., ¶¶ 40-48. Plaintiff also alleges various violations of the Fourth Amendment of the U.S. Constitution, the New Jersey State Constitution, the New Jersey Civil Rights Act, and the New Jersey Law Against Discrimination. Compl., ¶¶ 49-72.

In support, Plaintiff alleges that the responding officers subjected her son to an unreasonable search and used excessive force by placing him in handcuffs, constituting a deliberate indifference toward his medical needs. Compl., ¶¶ 49-59. Moreover, Plaintiff contends that the municipal entities have denied her access to the "services, facilitates, and benefits of local law enforcement agencies," and that, on a larger scale, a "pattern appears to exist wherein murder

2

investigations are delayed, not thoroughly pursued, and even ignored, when the victims are African American males" in Trenton. Compl., ¶¶ 62, 68.

Now, the MCPO moves to quash Plaintiff's subpoena which seeks to compel the production of certain materials in connection with its investigation of the murder of Mr. Greenfield. Specifically, the MCPO argues that the subpoena is improper and need not be complied with, because the requested information is privileged, given that it pertains to an ongoing criminal investigation. The City originally posited that the investigative file should be produced subject to a strict protective order; however, it subsequently retracted this position. Plaintiff opposes the Motion.

## II.   ANALYSIS

### A.   STANDARD OF REVIEW

Discovery in federal litigation is governed by the broad provisions of Federal Rule of Civil Procedure 26(b)(1), which specifically provides that a party is entitled to obtain the following information:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). A Rule 45 subpoena served in conjunction with discovery is required to fall within the scope set forth by Rule 26. *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 U.S. Dist. LEXIS 59705, at *4 (D.N.J. Aug. 13, 2007); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). In that connection, a District Court must quash a subpoena in four situations, one of which includes

3

"(A) [o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). Before the Court may grant a request for such relief, however, the moving party must "demonstrate that a privilege exists and that the subpoena would disclose such information." *Malibu Media, LLC v. Doe*, No. 12-2077, 2012 U.S. Dist. LEXIS 105768, at *14 (E.D. Pa. July 30, 2012) (citation omitted).

### B.    EXECUTIVE PRIVILEGE

The instant dispute was fully briefed by the parties, after which the Court conducted oral argument on April 19, 2018. However, because neither the City nor the MCPO had actually reviewed the investigation file prior to the hearing,[1] the MCPO was ordered to submit a Certification for the Court to review *in camera*. That Certification was required to specifically describe the status of the open and active underlying criminal investigation, the materials within the disputed file, and the federal privileges which allegedly supported withholding its contents from Plaintiff.

On May 11, 2018, the MCPO provided a Certification to the Court which was signed by James M. Scott, an Assistant Prosecutor for the MCPO. The Certification includes three sperate sections: (1) general background information on homicide investigations; (2) pertinent details about the underlying investigation; and (3) a privilege log. Furthermore, the privilege log specifies

---

[1] Significantly, the Court could have denied the MCPO's invocation of privilege during the hearing and required production based on this failure, alone. *United States v. O'Neill*, 619 F.2d 222, 227 (3d Cir. 1980) ("The indiscriminate claim of privilege may in itself be sufficient reason to deny it. The court when faced with such a claim cannot make a just or reasonable determination of its validity.").

4

each document in the disputed file and maintains that the majority of them are protected by executive privilege.

As the Third Circuit has held, "[w]hen a request for relevant documents or information is made, a claim of privilege should be interposed judiciously and not casually." *O' Neill*, 619 F.2d at 225. For this reason, "broadside invocation[s] of privilege, which fail[] to designate with particularity the specific documents or file to which the claim of privilege applie[s]" are insufficient to properly withhold the production of relevant information. *Id*. Rather, the manner in which a party invokes a privilege claim must satisfy the following requirements, as previously set forth by the Supreme Court: "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id*. at 226 (quoting *United States v. Reynolds*, 345 U.S. 1, 7-8, (1953)). There must also be "'a specific designation and description of the documents claimed to be privileged,'" in addition to the representation of "'precise and certain reasons for preserving' the confidentiality" of the disputed materials. *Id*. (quoting *Smith v. Federal Trade Com.*, 403 F. Supp. 1000, 1016 (D. Del. 1975)).

Significantly, even properly asserted claims of privilege are not absolute—to the contrary, they must be demonstrated on a case-by-case basis. In this regard, the Third Circuit has held that "the party who seeks the information must show the need for it so that the [C]ourt can 'balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand.'" *Id*. at 227 (citing *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979)); *Schaeffer v. Tracey*, No. 15-8836, 2017 U.S. Dist. LEXIS 15708, at *10 (D.N.J. Feb. 2, 2017) ("In cases invoking the privilege, the court is required to balance the public interest in having the information remain secret against the

5

litigants' need to obtain discovery.") (internal citation and quotations omitted). In performing this analysis within the context of a civil action involving the alleged misconduct of law enforcement, District Courts have widely applied the following ten factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). Accordingly, an assertion of privilege does not operate in a mechanical manner and foreclose the possibility of releasing sensitive materials. Rather, when information is requested and withheld on the basis of executive privilege, the District Court must balance the equities and, in turn, determine whether the particular circumstances justify nondisclosure.

### C. FEDERAL LAW

As a preliminary matter, the Court notes that the instant dispute concerns alleged violations of federal and pendant state law, thereby warranting an application of Federal Rule of Evidence 501. *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1207 (D.N.J. 1996). As that Rule sets forth, "in federal question cases, the federal common law of privilege applies rather than the state law of privilege." *Id*. In fact, a contrary result in a civil rights action could allow "state and county officials [to] exempt themselves from the very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential."

*Id*. at 1213 (citation omitted); *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987) ("It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities."). Therefore, based on these well-established principles, the Court is not bound by the New Jersey case law and statutory authority that the MCPO primarily references in its legal briefs. Instead, the MCPO must properly assert and demonstrate that a federal privilege is applicable in order to successfully quash Plaintiff's subpoena and refrain from producing the disputed materials.

In that connection, the MCPO maintains that Plaintiff's subpoena requests are inappropriate, as executive privilege precludes the disclosure of information in connection with an ongoing criminal investigation. Moreover, the MCPO contends that every document within the disputed file is protected, and the release of one may potentially interfere with the ability to successfully investigate an open murder case: "[r]eleasing the names of people of interest, potential suspects and/or targets of the investigation, as well as witnesses, could result in those individuals disappearing, being intimidated and/or harmed, as well as potentially prejudice pending or future prosecutions." Reply Brief in Further Support of MCPO's Motion to Quash ("MCPO Reply Brief"), at 5. In light of these consequences, the MCPO posits that the entire investigative file must be indefinitely withheld until the underlying criminal investigation is completed through the prosecution of a perpetrator, regardless of the time by which such an outcome occurs.

Although never expressly referenced, the MCPO appears to assert that the disputed investigative materials are protected by the law enforcement privilege. That privilege is "designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Torres*, 936 F. Supp. at 1209; *Reid v. Cumberland County*, 34 F.

7

Supp. 3d 396, 404 (D.N.J. 2013). However, these protections are not absolute—the law enforcement privilege does not preclude the production of investigative materials if, on balance, the pertinent factors indicate that their relevancy outweighs "the specific harm that would ensue from their disclosure." *Torres*, 936 F. Supp. at 1212. Significantly, the *Frankenhauser* factors were fashioned to assist in making such a determination and are appropriately applied in a flexible manner, based on the particular circumstances of a given case. *Frankenhauser*, F.R.D. 339 at 344. ("Needless to say, the balancing task will often be difficult and the ingredients of the test will vary from case to case.").

### D.     FRANKENHAUSER ANALYSIS

The Court proceeds on this Motion by weighing the MCPO's confidentiality concerns against the Plaintiff's need for the requested materials, within the context of the previously referenced balancing factors.[2] *See, e.g.*, *Groark v. Timek*, 989 F. Supp. 2d 378, 389 (D.N.J. 2013); *Carchietta v. Russo*, No. 11-7587, 2014 U.S. Dist. LEXIS 62344, at *14-15 (D.N.J. May 6, 2014); *D'Orazio v. Wash. Twp.*, No. 07-5097, 2008 U.S. Dist. LEXIS 69935, at *6 (D.N.J. Sept. 15, 2008).

In applying the *Frankenhauser* test, the Court first finds that the effects of disclosure will not thwart the governmental process by discouraging citizens from cooperating or communicating with law enforcement. Indeed, that concern is ameliorated by the application of a thorough and evaluative balancing test, as the particular circumstances of this case have warranted. The utilization of such legal protections and procedures, prior to the possible production of any

---

[2]     Although the MCPO failed to specifically reference the widely cited *Frankenhauser* factors, the Court is required to balance Plaintiff's interests in disclosure against the MCPO's concerns of confidentiality, pursuant to the applicable law within this Circuit. *O'Neill*, 619 F.2d at 227.

investigative documents, is sufficient to preclude a chilling effect by which the public would refrain from assisting law enforcement during criminal investigations. *Frankenhauser*, F.R.D. 339 at 344 ("First, we do not believe that rare instances of disclosure pursuant to a court order made after application of a balancing test comprising detailed standards such as those enumerated here would deter citizens from revealing information to the police."); *Chladek v. Pennsylvania*, No. 97-0355, 1998 U.S. Dist. LEXIS 3424, at *11 (E.D. Pa. March 18, 1998) ("[T]he [movant's] claim that future investigations would be impeded is not persuasive, given the test courts apply prior to divulging" investigative materials.) (citation omitted); *Crawford v. Dominic*, 469 F. Supp. 260, 264 (E.D. Pa. 1979) ("I do not accept the general proposition that citizens or fellow police officers will be less likely to give information . . . because in a few instances that information may be used in a later lawsuit."). Therefore, this factor weighs in favor of disclosure.

Next, the impact upon persons who have already provided information and whose identities will be disclosed as a result, may be eliminated through appropriate redactions and entry of a protective order. *Reid*, 34 F. Supp. 3d at 408-09 ("Even if disclosure of the personnel files will disclose the identities of any individuals . . . [the] potential harm resulting from the disclosure of those interviewed in the investigations is negated by the" entry of a confidentiality order); *Preston v. Malcolm*, No. 09-3714, 2009 U.S. Dist. LEXIS 114286, at *21 (D.N.J. Dec. 8, 2009) ("Presumably, a protective order would limit any use of the information beyond this litigation.") Therefore, to the extent that this factor weighs against disclosure, the Court holds the authority to implement the appropriate mechanisms and protections in order to preserve anonymity, as further discussed *infra*.

Moreover, disclosure will not chill intradepartmental self-evaluation and consequent program improvement, or interfere with an internal agency's disciplinary proceedings. Aside from

the absence of these materials in the MCPO's privilege log, the reports and documents which are contemplated by these factors are presumably more common in internal investigations of alleged officer misconduct. Although the Complaint includes assertions of this nature, the record fails to indicate that any internal disciplinary proceedings have arisen from the responding officers' alleged acts and omissions on July 19, 2014, the day on which Plaintiff's son was murdered. Nor are such proceedings likely to commence at this point in time, given that the events in question occurred over four years ago. *Frankenhauser*, 59 F.R.D. at 345 ("[O]ver two years have elapsed since the completion of the [intradepartmental] investigation, and no criminal charges have been brought against [the defendant officers]; it is unrealistic to believe that any will be brought, notwithstanding the fact that there is no statute of limitations on homicide.") Accordingly, these factors weigh in favor of disclosure.

Further, the requesting party is not an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question. Significantly, the instant dispute does not include a plaintiff who is utilizing the liberal tools of discovery in a civil action, in order to obtain certain information from a law enforcement agency which is conducting a criminal investigation of that plaintiff. Stated differently, Plaintiff is not attempting to discover information which pertains to an ongoing criminal investigation of which she is a target, through the initiation of a civil action. *See, e.g.*, *Financial Management Professional Corp. v. United States*, No. 88-2272, 1989 U.S. Dist. LEXIS 3760, at * 9-10 (E.D. Pa. April 11, 1989); *Jabara v. Kelley*, 75 F.R.D. 475, 493 (E.D. Mich. 1977). Because the potential concerns and abuses which may occur in that situation are not applicable to the circumstances presented, this factor also weighs in favor of disclosure.

Additionally, disclosure is not precluded by the open police investigation and the nature of the materials requested.[3] During the Court's oral argument, the MCPO indicated that although the current investigation is more than four years old, it remains "open and active." Tr. dated April 19, 2018, T3: 21-25. Based on this designation, alone, the MCPO argued that the "entire [investigatory] file is . . . cloaked" by the necessary protections such that every document must remain confidential and need not be produced. Tr. dated April 19, 2018, T10: 24-25. The MCPO maintained this position and cautioned against production in order to shield the investigation from any outside interference, despite the parties' marked unfamiliarity with the investigative file and the materials therein:

> Mr. Adezio: I don't have [the investigatory file], I've never reviewed [the investigatory files] so I don't know what they say.
> . . .
> The Court: Mr. Adezio, you've told me now twice you haven't seen the file, so I may be asking a question you can't answer. Any sense of what the volume of paper is here involved?
> Mr. Adezio: No, Your Honor.
> The Court: Anybody else? You would have no way of knowing, Mr. Morelli.
> Mr. Morelli: Your Honor, I have also not seen the file.

Tr. dated April 19, 2018, T11:9-10; T14:19-T20:2.[4] Although it failed to review or familiarize itself with the pertinent information in any capacity, the MCPO blindly posited that the status of

---

[3]   The Court acknowledges that investigative discovery has been denied on the basis of ongoing criminal investigations; however, this result is not absolute, as disclosure may be appropriate on balance. *Frankenhauser*, 59 F.R.D. at 345. Based on the specific circumstances of this case and the nature of the underlying investigation, the Court finds that such a result is warranted here, as further discussed *infra*.

[4]   The Court notes that the MCPO offered the investigative file for an *in camera review*: "[t]he only other option is if Your Honor's interested in an in-camera review, . . . but that's up to Your Honor in doing an in-camera." Tr. dated April 19, 2018, T7:10-13. The Court ultimately declined this suggestion, noting that the burden of reviewing the investigatory materials—

11

the investigation requires every requested document to remain confidential until it is resolved, regardless of the time required to achieve this result:

> The Court: How long does the [Plaintiff] in this case have to wait before your investigation is no longer active such that [she] might be able to access those [investigatory] materials?
> Mr. Adezio: The best answer is that the Statute of Limitations for murder is there is no Statute of Limitations, Your Honor.
> The Court: Right.
> Mr. Adezio: So the case is always going to be active until—unless and until they find someone, that's the best answer I can give you.

Tr. dated April 19, 2018, T3:24-25; T6:4-14. On the other hand, the City suggested a different approach, accounting for the status of the underlying criminal investigation:

> The Court: Well, for how long do we let that case—the plaintiff's case sit?
> Mr. Morelli: I think that's a very good question, Your Honor, and I don't have an answer for you except that we—if its active—and I'm talking about if something's being done, if something's being considered, something's being done, and leads are being looked into as opposed to be[ing] put on a cold case, back burner, as Your Honor suggested, and it—I think we have to give the Assistant Prosecutor a certain amount of leeway if it's—when he indicates that it's an active ongoing investigation, perhaps we can get a little more detail as to what that means.

---

particularly for the first time—and ascertaining any applicable privileges falls on the MCPO, not the Court. In that same vein, the MCPO may not shift its burden onto the Court by offering the investigatory files for an *in camera review*, in lieu of initially reviewing that information itself. *Torres*, 936 F. Supp. at 1213 ("The court further declines the defendants' invitation to conduct an *in camera* inspection of all the withheld documents. The purpose of the rules governing assertion of privileges is, in part, to avoid having the court expend its resources in reviewing every document that every defendant claims is privileged. The burden properly falls upon the party claiming privilege."). Nevertheless, in an effort to gain a fuller understanding of the disputed information, the Court ordered the MCPO to produce a Certification which described the status of the investigation and the contents of the investigatory file.

Tr. dated April 19, 2018, T16:24-T17:10. Before concluding the hearing, the Court instructed the MCPO to submit a detailed Certification in order for the Court to assess the nature and extent of the open and "active," four-year old investigation, as well as the materials contained within the disputed file.

As an initial matter, the law clearly demonstrates that the MCPO's "broadside invocation of privilege" during the in-person hearing is insufficient to withhold the disputed materials from Plaintiff. *O'Neill*, 619 F.2d at 225; *Frankenhauser*, 59 F.R.D. at 343 n.8 ("[T]he Supreme Court expressly disapproved blanket acceptance of executive claims of privilege . . . .") (citation omitted); *Castellani v. City of Atl. City*, No. 13-5848, 102 F. Supp. 3d 657, 671 (D.N.J. 2015) ("The Court rejects Defendant Atlantic City's blanket assertion of the law enforcement privilege."). Thus, the Court must determine whether the MCPO's subsequent Certification adequately weighs against the disclosure of any information based upon the investigation's designation as open and "active."[5]

Specifically, the MCPO provides the following grounds against disclosure in its Certification: (a) "in the future a possible eyewitness [may] be arrested on new charges that may inspire the eyewitness to come forward and provide critical details on this homicide[,]" and (b) "it is also possible that a suspect may have told an unknown person about his involvement in this case and that person may come forward if arrested later." Certification of James Scott (dated May 11, 2018) ("James Scott Cert."), ¶ 23. Based on these speculations, the MCPO maintains that the "investigative facts" must remain confidential until the case is complete. Otherwise, the assigned

---

[5] For the purposes of this Motion, the Court finds that the MCPO's Certification satisfies the procedural requirements for asserting executive privilege, as the Third Circuit promulgated in *O' Neill*. Nonetheless, the MCPO's assertions of executive privilege are insufficient to bar disclosure, for the reasons provided herein.

detectives will be unable to assess credibility by "evaluat[ing] any new witness information against investigative facts that could not be known outside of the investigation." James Scott Cert., ¶ 23.

Notwithstanding that these speculations are applicable to every unresolved criminal investigation, the Certification demonstrates an absence of any "active" prosecutorial or investigative efforts which disclosure will compromise. Indeed, the pertinent incident occurred on July 19, 2014—more than four years ago—but "no one has been charged with any crime at this point" and "there are no current investigative leads that can be pursued." Tr. dated April 19, 2018, T4:16-17; James Scott Cert., ¶ 24. The City also submitted a letter wherein it acknowledges the date on which the incident occurred and contends that the investigation "may remain unsolved for some time into the future." Letter from the City of Trenton, dated February 5, 2018 ("2018 Letter").[6] Because it appears that the underlying investigation is largely stagnant, the preclusion of discovery may indefinitely hold Plaintiff's constitutional claims in abeyance; indeed, the statute of limitations is inapplicable to the subject crime. Despite the MCPO's contrary contentions, requiring Plaintiff to sit idly until the investigation is complete is in violation of the pertinent law. *Noble v. City of Fresno*, No. 16-1690, 2017 U.S. Dist. LEXIS 194489, at *21 (E.D. Cal. Mar. 19, 2018) ("Such an indefinite timeframe is unreasonable. Private litigants have certain rights and municipal entities may not retain documents indefinitely and keep them from disclosure on a

---

[6] In this same letter, the City suggests a position which diverts from that of the MCPO. Upon its "review[] [of] the file and the [MCPO's] Motion to Quash," the City maintains that disclosure is appropriate pursuant to the following protections: "the MCPO should produce its file under a strict confidentiality order, with the plaintiff's counsel being instructed that he may not copy or provide copies to his client." 2018 Letter. The MCPO responded to the City's correspondence after which the City retracted its legal position, apparently based upon another "review" of the Motion to Quash. Nevertheless, the Court notes that the City's withdrawal was confined to its prior legal position, not its earlier statement in connection with the temporal aspect of the underlying investigation.

statement that a self-imposed investigation is still continuing."); *Financial Management Professional Corp.*, 1989 U.S. Dist. LEXIS 3760, at *13-14 ("Certainly, as time continues the interests of the public in [maintaining the confidentiality of open investigative files] decreases while the interest of the public in protecting against unconstitutional [violations] increases by comparison."); *Jabara*, 75 F.R.D. at 494 ("[C]laims of privilege based upon ongoing criminal investigations do not apply indefinitely. After the expiration of a reasonable period of time, the privilege is lost.") (citations omitted). Rather, because the MCPO is not actively pursuing the underlying investigation, but requires a non-investigative third party to come forward more than four years after the incident in question, these factors weigh in favor of production.

Furthermore, the pertinent evidence does not demonstrate that Plaintiff's Complaint is frivolous or brought in bad faith. To the contrary, although the MCPO argues against disclosure and references the public's interest in the successful prosecution of ongoing criminal investigations,[7] the Court notes that the pubic also has an equal if not greater interest in the enforcement of civil rights under 42 U.S.C. § 1983. As the District Court of Wisconsin aptly stated:

> It is the manner of enforcement which gives § 1983 its unique importance, for enforcement is placed in the hands of the people. Each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

---

[7] Although the MCPO argues against disclosure by relying upon the "public's interest" in successful criminal prosecutions, the Court notes that Plaintiff's interests are aligned with that of the public, given that the instant investigation pertains to her son's homicide. This situation is markedly distinct from the previously discussed circumstances, wherein the requesting party attempts to subpoena information in connection with a criminal investigation, to which that party is a target.

15

*Frankenhauser*, F.R.D. 339 at 343 (citing *Wood v. Breier*, 54 F.R.D. 7, 10-11 (E.D. Wisc. 1972)); *Revelle v. Trigg*, No. 95-5885, 1999 U.S. Dist. LEXIS 890, at *6 (E.D. Pa. Feb. 2, 1999) ("In a civil rights action involving asserted official misconduct a claim that relevant evidence is privileged must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional action.") (citations and quotations omitted); *Wood*, 54 F.R.D. at 11 ("Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden."). In light of these policy considerations and the absence of any evidence which demonstrates an improper motive, this factor weighs in favor of disclosure.

Next, the requested information appears unavailable through other discovery or from any other sources. Indeed, the investigatory file is within the sole control of the MCPO, particularly since, as a general policy, the Mercer County Homicide Task Force and the Mercer County Prosecutor "believe that no documents from a criminal homicide investigation should be released until the case is complete." James Scott Cert., ¶ 22. Therefore, because no other entities from which Plaintiff may request this disputed information appear available, this factor weighs in favor of disclosure.

Finally, the requested information is essential to Plaintiff's case. Indeed, the relevance of the investigatory file is not disputed. Moreover, because the incident in question occurred more than four years ago, the significance of any written statements and information contained within the investigatory file is heightened, presumably since memories may have faded and pertinent evidence may have disappeared. *Brunt v. Hunterdon County*, 183 F.R.D. 181, 187 (D.N.J. 1998) ("[T]he investigation occurred over four years ago, and memories undeniably fade as time passes. Thus, prior statements taken over four years ago may be more valuable to Plaintiff . . . at this

16

time."); *Saunders v. City of Philadelphia*, No. 97-3251, 1997 U.S. Dist. LEXIS 10078, at *6 (E.D. Pa. July 11, 1997) ("A court must, however, be cognizant that delaying a suit may increase the risk for both parties of, among other things, loss of evidence through fading memories and the death of individuals.") (citations and quotations omitted). Accordingly, the final factor supports disclosure.

### III. CONCLUSION

Because, on balance, an application of the pertinent factors weighs in favor of production, the MCPO's Motion to quash is denied. However, while the investigatory file is discoverable, prior to its production and no later than seven (7) days from the date of this Opinion, all counsel must execute and submit to the Court for filing an appropriate Discovery Confidentiality Order. Within seven (7) days thereafter, the MCPO shall produce its investigatory file, with the exception of the six documents in the MCPO's privilege log designated as work product. The investigatory file shall be produced for the limited purposes of this litigation, labeled for "attorney's eyes only." An appropriate Order accompanies this Opinion.

s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge

Dated: October 31, 2018