**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TALAY GREENFIELD, Administratrix ad prosequendum, individually and on behalf of the ESTATE OF JAMER J. GREENFIELD,<br><br>Plaintiff,<br><br>v.<br><br>TRENTON POLICE DEPARTMENT; THE CITY OF TRENTON; TRENTON POLICE DIRECTOR ERNEST PARREY, individually and in his official capacity; THE COUNTY OF MERCER; THE MERCER COUNTY PROSECUTOR'S OFFICE JOHN/JANE DOES (#1-20),<br><br>Defendants. | Civil Action No. 16-04366 (FLW)<br><br>OPINION |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff, Talay Greenfield, Administratrix ad prosequendum, individually and on behalf of the Estate of Jamer J. Greenfield ("Plaintiff"), brought this civil rights action under 42 U.S.C. § 1983 against Defendants, the Trenton Police Department ("Police Department"), the City of Trenton ("City"), and Trenton Police Director Ernest Parrey ("Director Parrey") (collectively, the "Trenton Defendants"), in connection with the fatal death of her son, Jamer J. Greenfield ("Greenfield"). Presently before the Court is the Trenton Defendants' Motion for Summary Judgment seeking dismissal of Plaintiff's claims for wrongful death and survivorship (Count One), excessive force in violation of the Fourth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, *et seq.*, related to the police's use of handcuffs on Greenfield (Count Two), deliberate indifference to the medical

needs of Greenfield under § 1983 and the NJCRA[1] (Count Three), *Monell* claim under § 1983 based on the City and the Police Department's purported mishandling of murder investigations involving African American male victims (Count Four), and violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, as it relates to the Trenton Defendants' investigation of Greenfield's death (Count Five).

For the reasons set forth below, the Trenton Defendants' Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

The following facts are undisputed unless otherwise noted.[2] On July 19, 2014, two officers from the Trenton Police Department were patrolling in the 100 block of Rosemont Avenue, in Trenton, New Jersey, when they heard approximately four to five gunshots nearby. (Trenton Defendants' Statement of Undisputed Material Facts in Support of Summary Judgment ("Def. SUMF"), at ¶ 1.) The officers then observed eight to ten black males running in various directions from the area in front of 209 Rosemont Avenue. (*Id.* at ¶¶ 2-3.) Several individuals ran up Hoffman Avenue towards Stuyvesant Avenue, and the officers pursued them while also announcing the "shots fired incident" over their police radios. (*Id.* at ¶ 3.) As the officers turned onto Hoffman

---

[1] Courts in New Jersey view the NJCRA as analogous to § 1983, *see, e.g., Hedges v. Musco*, 204 F.3d 109, 121 n.12 (3d Cir. 2000); *Van Tassel v. Ocean Cty.*, No. 16–4761, 2017 WL 5565208, at *6 (D.N.J. Nov. 17, 2017); *Velez v. Fuentes*, No. 15–6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016); *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (D.N.J. 2013); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Accordingly, Plaintiff's NJCRA claims will be interpreted analogously to her § 1983 claims. *Trafton*, 799 F. Supp. 2d at 443–44; *see Hedges*, 204 F.3d at 121 n.12 (concluding New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

[2] Plaintiff did not submit a responsive statement of undisputed material facts that comports with Local Civil Rule 56.1. Pursuant to Local Civil Rule 56.1, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." However, because Plaintiff is proceeding *pro se*, the Court has carefully reviewed Plaintiff's submissions to determine which facts, if any, she contests.

Avenue, at approximately 5:01:23 a.m., they observed a black male, later identified as Greenfield, laying in the street, facedown, next to a black Acura. (*Id.* at ¶ 4.)

The officers exited their police vehicle to assess Greenfield, who they observed as having a large amount of blood covering the front of his shirt. (*Id.* at ¶¶ 5, 9.) Identifying Greenfield as unresponsive, one of the officers, Officer Runyon, provided medical aid to Greenfield, while his partner, Officer Schiaretti, requested an ambulance at 5:01:47 a.m. (*Id.* at ¶¶ 6-7.) While awaiting the ambulance, the officers placed Greenfield in handcuffs. (*Id.* at ¶ 8.)

Greenfield was transported to Fuld Hospital at approximately 5:22:48 p.m.; however, he was pronounced dead at 5:30 a.m. (*Id.* at ¶¶ 11, 16.)

### B.     **Procedural History**[3]

On July 18, 2016, Plaintiff filed her Complaint, which asserts various federal and state law claims related to the police officers' treatment of Greenfield and the Trenton Defendants' subsequent investigation of his death. (ECF No. 1.)

Several months later, in October 2016, the parties stipulated and agreed that all claims against the County of Mercer were dismissed with prejudice. (ECF No. 7.) In June 2017, the Hon. Michael A. Shipp, U.S.D.J. also dismissed all claims asserted against the Mercer County Prosecutor's Office with prejudice. (ECF No. 14.)

Two years later, in April 2019, this case was stayed "in order to permit Plaintiff's counsel time to conclude communications with the Mercer County Prosecutor's Office." (ECF No. 40.) In October 2019, the case was restored, and discovery was later closed. (ECF Nos. 50 and 80.) At a status conference conducted on October 27, 2021, the Magistrate Judge instructed the parties to

---

[3]     Three different judges have presided over this case, with the most recent reassignment occurring in April 2022, when the case was reassigned to me. (ECF No. 94.)

file dispositive motions by December 10, 2021, and on November 12, 2021, the Trenton Defendants filed the instant motion. (ECF No. 84.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable [factfinder] could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative

4

evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DISCUSSION

The Trenton Defendants argue summary judgment is appropriate on all claims brought against them because (1) the force exercised by Officers Runyon and Schiaretti, namely their use of handcuffs on Greenfield, was reasonable under the circumstances; (2) the Trenton Defendants responded promptly and diligently to administer medical treatment upon discovering Greenfield's condition; and (3) the NJLAD does not provide a cause of action for family members who believe they have not received adequate information about a murder investigation. Further, as it relates to

Plaintiff's *Monell* and wrongful death and survivorship claims, the Trenton Defendants argue that those claims must be dismissed based on Plaintiff's inability to prove an underlying constitutional violation and a failure to file a Tort Claims Notice in connection with the New Jersey Tort Claims Act.

### A. **Excessive Force**

First, the Trenton Defendants challenge Count Two of the Complaint, which asserts a claim for excessive force in violation of Greenfield's Fourth Amendment rights under § 1983. In Count II, Plaintiff claims that the Trenton Defendants engaged in the use of force that was excessive and objectively unreasonable under the circumstances, Compl., ¶¶ 49-56, because Greenfield had already been the victim of gunshot wounds. (*Id.* at ¶ 51.) The Trenton Defendants move for summary judgment, arguing that although Greenfield appeared incapacitated when the officers discovered him, the decision to place him in handcuffs did not cause him any physical pain or result in any injury or discomfort to Greenfield. (Def. Mov. Br., 11.) Rather, the Trenton Defendants argue that the decision to place Greenfield in handcuffs was made out of an abundance of caution for the safety of the officers and any potential bystanders nearby. (*Id.*)

I begin my analysis of Plaintiff's excessive force claim with a discussion of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Medley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome qualified immunity, a plaintiff must plead facts sufficient to show that: (1) the official violated a statutory or

constitutional right; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232; *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). The burden of proving the affirmative defense of qualified immunity rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006).

1. Deprivation of a Constitutional Right

The Court begins by considering whether a reasonable fact-finder could conclude that the Trenton Defendants deprived Plaintiff of a constitutional right. Plaintiff has alleged that officers of the Trenton Police Department used excessive force against Greenfield, namely in their decision to handcuff him. (*See* Compl., ¶ 51.) A police officer who uses excessive force in the course of his or her duties violates the Fourth Amendment's prohibition of unreasonable searches and seizures. *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006). In determining whether the amount of force used is excessive, the relevant inquiry is whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotation marks omitted). Courts engaging in this analysis must be sensitive to the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396. In analyzing the conduct alleged, the Court looks at several factors, including

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, ... whether he is actively resisting arrest or attempting to evade arrest by flight[,] ... the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility

7

>that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Couden*, 446 F.3d at 496–97 (citations omitted).

While the Court acknowledges the severity of the circumstances surrounding the alleged shooting, including the fear and safety concerns of the responding police officers, none of the facts relied on by the Trenton Defendants suggest that Greenfield was a suspect or a direct threat to the safety of the officers or the community. Indeed, according to the Trenton Defendants' own facts, when the officers arrived at the scene, they immediately identified Greenfield, who was laying facedown in the street, as unresponsive. The officers observed Greenfield's gunshot wounds and requested an ambulance for further medical assistance. It was <u>after</u> requesting an ambulance for the unresponsive Greenfield that the officers then placed Greenfield in handcuffs. But, clearly by the time the officers decided to handcuff Greenfield, the facts indicate that Greenfield was neither a threat to escape, nor was he capable of harm given his physical condition. Had the officers been concerned that Greenfield was armed, they could have quickly patted him down for any weapons, without the need for handcuffs, after assessing his physical condition. Further, to the extent the Trenton Defendants argue that the approximately eight to ten other individuals seen fleeing the scene posed an external threat to the safety of the officers, those individuals, according to the officers' own account, had already dispersed when they handcuffed Greenfield. Hence, although a shooting had occurred in the area moments before the officers' arrival, no evidence exists in the record of any ongoing threat—and especially not one posed by Greenfield. Based on this record, it does not appear that Greenfield posed an immediate threat of serious harm to the police officers or anyone else.

Lastly, the Court notes that Plaintiff's failure to provide any proof of injury to Greenfield based on the police officers' use of handcuffs does not change the calculus. Indeed, the Third

Circuit has noted that "the absence of injury does not legitimize otherwise excessive force." *Graham-Smith v. Wilkes-Barre Police Dep't*, 739 Fed. Appx. 727, 731 (3d Cir. 2018) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) ("We do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that physical force was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality."), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199, 209–11 (3d Cir. 2007); *cf. Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."). Accordingly, viewing the evidence presented in the light most favorable to Plaintiff, there is sufficient evidence from which a trier of fact could reasonably conclude that the police officers' handcuffing of Greenfield was excessive.

### 2. Clearly Established Right

Because the Court has determined that a reasonable jury could find that a constitutional violation occurred, I must consider whether Greenfield's rights were "clearly established" at the time. *See Green v. N.J. State Police*, 246 F. App'x 158, 162 (3d Cir. 2007). A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There need not be a case that is "directly on point," *Al-Kidd*, 563 U.S. at 741, but " 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.' " *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). "[T]he legal principle" must also "clearly prohibit the officer's conduct in the particular circumstances before him," which "requires a high 'degree of specificity.' " *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix*, 577 U.S. at 13). In that regard, the "clearly

established" inquiry "must be undertaken in light of the specific context of the case, not as a general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236). The Supreme Court has repeatedly emphasized that the right at issue should not be defined "at a high level of generality." *Ashcroft*, 563 U.S. at 742. "The dispositive question is whether the violative nature of particular conduct is clearly established." *Mullenix*, 577 U.S. at 11 (internal quotations omitted). Factual specificity is particularly important in the Fourth Amendment context because it may be "difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* at 308 (quoting *Saucier*, 533 U.S. at 205). In light of these directions from the Supreme Court and the Third Circuit, the Court identifies the right at issue as follows: the right of an unresponsive individual, who posed no threat to law enforcement, to be free from being placed in handcuffs, when those handcuffs caused no injury or harm.

For qualified-immunity purposes, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.' " *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted); *see Wesby*, 138 S. Ct. at 589–90 ("To be clearly established, a legal principle must ... [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" (citations and internal quotation marks omitted)).

Here, the Court's independent review did not find any binding Supreme Court or Third Circuit precedent, or a "robust consensus of cases of persuasive authority in the Courts of Appeals" to support the notion that the right at issue was clearly established at the time the police officers handcuffed Greenfield. Rather, the only body of case law that comes close to addressing the right

at issue, involves excessive physical force against an already handcuffed incapacitated or unresponsive individual. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (finding that that driving heavy pressure into a prone, handcuffed, incapacitated detainee's back was constitutionally impermissible because it posed a serious risk of asphyxiation to the arrestee and was unnecessary to protect the officers); *McCoy v. Meyers*, 887 F.3d 1034, 1038 (10th Cir. 2018) (denying qualified immunity where officers brought the plaintiff to the ground, struck him, and rendered him unconscious with a carotid restraint maneuver, before then handcuffing the plaintiff and striking him again once he regained consciousness); *Waiters v. City of Scranton*, No. 07-1722, 2009 WL 10718511, at *8 (M.D. Pa. Sept. 28, 2009) (denying qualified immunity where officers dragged an unconscious, handcuffed, and shackled person, on their stomach, down an alley). While the 'clearly established' standard does "not require a case directly on point," the cases highlighted here, fall well short of "a robust consensus of persuasive authority." *Ashcroft*, 563 U.S. at 741-42 (internal quotation marks omitted). To be clear, no case decided by the Supreme Court, the Third Circuit, or any other federal courts of appeal, involve a sufficiently analogous situation to this one such that "<u>every reasonable official </u>would interpret [them] to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590 (emphasis added). Thus, because existing precedent has not placed the constitutional question at issue "beyond debate," *Ashcroft*, 563 U.S. at 741, I find that the Trenton Defendants are entitled to summary judgment as to Plaintiff's state and federal excessive force claims on the basis of qualified immunity.[4]

---

[4] As mentioned above, *supra*, because the NJCRA is a state law corollary to § 1983 and Plaintiff's NJCRA claims are interpreted analogously to her § 1983 claims, her claim for excessive force under the NJCRA is dismissed based on qualified immunity. *See Shuman v. Raritan Twp.*, 14-3658, 2016 WL 7013465, at *17 (D.N.J. Nov. 30, 2016) (dismissing a plaintiff's excessive force claim asserted under the NJCRA based on qualified immunity); *Roberson v. Borough of Glassboro*, 20-02765, 2021 WL 5154000, at *7 (D.N.J. Nov. 5, 2021) (same).

B.     **Deliberate Indifference to Medical Needs**

In Count Three, Plaintiff alleges that the Trenton Defendants acted with deliberate indifference to Greenfield's medical needs in violation of § 1983 and the NJCRA based on the Trenton police officers' purportedly slow and/or delayed response upon encountering the unresponsive Greenfield. (Compl., ¶¶ 23, 58-59.) The Trenton Defendants move for summary judgment, arguing that the record "establishes that the Trenton Police Officers were nothing but prompt and diligent in getting Mr. Greenfield medical treatment." (Def. Mov. Br., 1-2.) Given that the record lacks any evidence of a delayed response by the Trenton Defendants, or any medical personnel for that matter, I agree that no reasonable juror could find the Trenton Defendants acted with deliberate indifference to Greenfield's medical needs.

Failure to provide medical care to a person in custody may amount to a constitutional violation under § 1983 "only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995); *see also Easterling v. City of Newark*, 778 F. App'x 80 (3d Cir. 2019) (*per curiam*) (applying deliberate indifference standard to delay of medical care claim where the plaintiff was shot by police at the scene of a robbery). Such a claim requires that plaintiff demonstrate that (1) defendants were deliberately indifferent to his medical needs; and (2) the medical needs were objectively serious. *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999).

As an example, in *Easterling*, the Third Circuit agreed with the district court that the plaintiff could not show that a police officer was deliberately indifferent to his need for medical care for the plaintiff's gunshot wound. 778 Fed. Appx. at 83. As the Third Circuit reasoned, the facts demonstrated that upon learning that the plaintiff had been shot, the police officer immediately decided to drive the plaintiff to the hospital. *Id.* Indeed, the Third Circuit set forth a

12

detailed timeline starting with the police officer began driving at 3:10 p.m., which was, at most, only ten minutes after the plaintiff had been shot. *Id.* At 3:13 p.m., the police officer flagged down an ambulance, at which point the plaintiff was transferred to the ambulance and began receiving medical care. *Id.* The ambulance arrived at the hospital at 3:28 p.m., and the plaintiff was discharged less than four hours later. *Id.* Thus, because the undisputed facts in the record showed that the police officer "responded promptly and appropriately upon learning that [the plaintiff] was shot," the Third Circuit found that the district court correctly granted summary judgment against the plaintiff on his delay-of-medical-care claim. *Id.*; s*ee also Gunter v. Township of Lumberton*, 2012 WL 2522883, at *14 (D.N.J. 2012) (granting summary judgment in favor of the defendant officers when "the total time span of the incidents in question—from Larry Gunter's 9–1–1 call at 1:29 a.m. to the arrival of the second ambulance at 2:05 a.m. – constitutes a period of only thirty-six minutes"; and "[d]uring that time, the officers responded to Mr. Gunter's medical needs as they arose—first for the head laceration with the call for medical assistance at approximately 1:43 a.m.—and second for advanced life support medical assistance when Mr. Gunter became unresponsive at the conclusion of the twelve minute struggled where he resisted arrest"); *Hinton v. White*, 2012 WL 6089476, at *6 (D.N.J. 2012) (finding defendant police officers did not act with deliberate indifference where their police car struck the plaintiff, the defendant officers handcuffed the plaintiff, secured bundles of heroin that the plaintiff tossed away from his body, attempted to search the plaintiff's body, and then when the plaintiff began screaming in pain, the officers ceased their search and called for an ambulance).

      Here, the evidence in the record resoundingly demonstrates that no reasonable juror could find the Trenton Defendants acted with deliberate indifference to Greenfield's medical needs, and as such, Plaintiff's claim fails as a matter of law. Specifically, Plaintiff provides no evidence to

dispute the Trenton Defendants' timeline of events, which shows that the police officers first encountered Greenfield, lying in the street, at 5:01:23 a.m. Having immediately identified Greenfield as a gunshot victim, Officer Schiaretti requested an ambulance at 5:01:47 a.m. -- <u>less than thirty seconds after discovering Greenfield</u>. From there, Greenfield was transported by ambulance to the hospital at approximately 5:22:48 p,m., and he was pronounced dead at 5:30 a.m. Based on these facts, which are supported by the Investigative Report and Computer Aided Dispatch Report following the incident, I find nothing in the record to demonstrate that any of the Trenton Defendants intentionally delayed medical treatment or otherwise acted with deliberate indifference to Greenfield's serious medical needs. Indeed, Plaintiff does not provide a scintilla of evidence to support an alternate timeline which could possibly suggest any delay on the part of the Trenton police officers in providing Greenfield with medical care.

Moreover, the record also lacks any evidence which suggests that any of Greenfield's injuries were the result of the police officers' alleged delay in providing medical care, or that Greenfield's condition worsened because of that unsubstantiated delay. Indeed, like the excessive force claim, Plaintiff provides no medical reports, medical expert opinion, or any other evidence related to Greenfield's injuries. This lack of medical evidence provides additional support for the Court to award summary judgment in favor of the Trenton Defendants. *See Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 406 (D.N.J. 2016) (finding that the fact that "[p]laintiff has provided no evidence that any delay or denial of medical care 'exacerbated his medical condition, caused infection, or otherwise subjected him to an increased risk of harm' " supported summary judgment on plaintiff's denial of medical care claim) (citations omitted); *see also Horvath v. City of New York*, No. 12-6005, 2015 WL 1757759, at *6 (E.D.N.Y. Apr. 17, 2015) (granting summary judgment on plaintiff's denial of medical care claim where plaintiff "offer[ed] evidence of a

14

number of injuries resulting from [an] alleged assault[,]" but made "no attempt to connect [those injuries] to the alleged delay in medical attention").

Put simply, no evidence exists in the record to suggest that any of the Trenton Defendants intentionally delayed medical treatment to Greenfield or otherwise acted with deliberate indifference to Greenfield's medical needs in a manner giving rise to § 1983 liability. Rather, the undisputed facts of record show that the Trenton police officers responded promptly and appropriately upon learning that Greenfield had been seriously injured. Accordingly, summary judgment is granted in favor of the Trenton Defendants on Plaintiff's medical care claim under § 1983 and the NJCRA.

### C. *Monell* Claim

In Count Four, Plaintiff alleges that the Trenton Defendants "authorized, condoned, acquiesced in and/or were aware of a pattern of misconduct and unconstitutional acts engaged in by its Officers and staff by which the violent crimes and murders of African American men in the City of Trenton are mishandled and/or given low priority treatment." (Compl., ¶ 61.) Further, Plaintiff alleges that "the families of [murder] victims, in particular the [m]others of these tragically killed African American males, are ignored, lied to, given misrepresentations and false promises, and otherwise obstructed from finding out the truth as to what happened to their sons[.]" (*Id.* at ¶ 63.) On this motion, the Trenton Defendants move for summary judgment, arguing that Plaintiff cannot maintain any cause of action for constitutional violations against either the Police Department or the City.

Under *Monell*, a municipality can only be liable for a constitutional violation pursuant to an action based on section 1983 when "the alleged constitutional transgression implements a policy, regulation or decision officially adopted by the governing body or informally adopted by

15

custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Moreover, a plaintiff must demonstrate that "a local government's policy or custom inflicted the injury in question." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694) (internal brackets and quotation marks omitted)).

Here, Plaintiff's claim against the City of Trenton and the Police Department in Count Four must fail for the simple reason that she has not established, let alone alleged, an underlying violation of Greenfield's constitutional rights as it relates to the subsequent murder investigation conducted by the Trenton Defendants. *See Blair v. City of Pittsburgh*, 711 F. App'x 98, 103 (3d Cir. 2017) (citing *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim" based on *Monell*)). Rather, as discussed in detail above, *supra*, the only potential constitutional violation that this Court has found is rooted in the police officers' use of excessive force, not the ensuing investigation into Greenfield's murder. Importantly, Plaintiff has not raised a § 1983 claim of her own constitutional right regarding the investigation. Moreover, even if a constitutional violation could be found as to the investigation, Plaintiff provides no proof of any policy, custom, or procedure existing within the City of Trenton or the Police Department that treats murder investigations involving African American male victims differently than the same crime committed against other races or genders. For these reasons, the City of Trenton and the Police Department are entitled to summary judgment on the *Monell* claim.

D.      **New Jersey Law Against Discrimination**

In Count Five, Plaintiff asserts a claim under the NJLAD, alleging that the Trenton Defendants "discriminated against Plaintiff, and other African American crime victims and crime

victim family members similarly situated, due to her and her son's race and/or color." (Compl., ¶ 67.) Specifically, Plaintiff claims that she was discriminated against with respect to her "access to the services, facilities, and benefits of local law enforcement agencies[.]" (*Id.* at ¶ 68.) As to the Police Department, Plaintiff alleges that it "refused to cooperate or share information with [Greenfield's] family," including Plaintiff in particular. (*Id.* at ¶ 26.) On this motion, the Trenton Defendants move for summary judgment, arguing that the NJLAD does not provide a cause of action for family members of a crime victim who believe that they have not received adequate information or communication from a police department regarding an ongoing investigation.

The NJLAD prohibits unlawful discrimination in employment, housing, places of public accommodation, and certain business transactions. *See* N.J.S.A. §§ 10:5–4, 10:5–12; *Jackson v. Concord Co.*, 54 N.J. 113, 122 (1969); *Rubin v. Forest S. Chilton, 3rd, Mem'l Hosp., Inc.*, 359 N.J. Super. 105, 109–10 (App. Div. 2003). As discussed above, Plaintiff, here, appears to base her claim on a theory of race-based discrimination in a place of public accommodation, *i.e.*, the police station. The NJLAD provides that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of race. N.J.S.A. § 10:5–4. In this connection, this District has held that police stations are places of public accommodation. *Jobes v. Moorestown Twp.*, No. 03–4016, 2006 WL 3000444, at * 11 (D.N.J. Oct.19, 2006) ("an [NJ]LAD claim against the police department may proceed beyond the dismissal stage because the police department is considered a place of public accommodation") (citing *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 337 (App. Div. 2004)).

"New Jersey courts generally interpret the [NJ]LAD by reliance upon [the construction of] analogous federal antidiscrimination statutes" *Chisolm v. Manimon*, 97 F.Supp.2d 615, 621

17

(D.N.J. 2000), *rev'd on other grounds*, 275 F.3d 315 (3d Cir.2001). Indeed, this Court has analyzed NJLAD claims based on racial discrimination using the same standard governing Equal Protection claims. *Clark v. Bd. of Educ. of the Franklin Twp. Pub. Sch.*, No. 06–2736, 2009 WL 1586940, at *6–11 (D.N.J. June 4, 2009) (analyzing a plaintiff's § 1983 claim of Equal Protection violation and his NJLAD claims together); *Rojas v. City of New Brunswick*, No. 04–3195, 2008 WL 2355535, at *31 (D.N.J. June 4, 2008) (using Equal Protection standard to analyze NJLAD claim regarding an allegedly racially discriminatory arrest). To show a violation of Equal Protection, a plaintiff must show that the defendant's actions had a "disproportionate impact" and were motivated by "discriminatory intent." *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–66 (1977). Further, courts have held that NJLAD racial discrimination claims require proof of intent to discriminate. *Parker v. Dornbiere*, 140 N.J. Super. 185, 189 (App. Div. 1976) (intent to discriminate is required for a NJLAD racial discrimination claim); *Rojas*, 2008 WL 2355535, at *31 ("[t]he crucial element is the intent to discriminate").

Here, regardless of whether the NJLAD provides Plaintiff the recourse she seeks, Plaintiff provides absolutely no evidence of discriminatory intent by the Police Department or any other Trenton Defendant in connection with her son's murder investigation. In opposition to the Trenton Defendants' motion for summary judgment, Plaintiff relies solely on the fact that she "[d]id not receive adequate information or personal belongings, such as jewelry." (Pl. Opp., 3.) Plaintiff states that instead of the jewelry being returned to her, she was "instructed to sign [her] son's jewelry over to the mothers of his children but they refused to sign the papers." (*Id.*) In support of this claim, Plaintiff provides only a letter from Paul R. Adezio, Esq., the Mercer County Counsel, on behalf of the Mercer County Prosecutor's Office. (*See* Pl. Opp., Ex. C.) Mr. Adezio states that he is in receipt of Plaintiff's July 21, 2020 letter requesting certain property belonging to

18

Greenfield, and that he has "not received any signed release forms from the identified mothers of [Greenfield's] children[.]" (*Id.*) According to Adezio, "[w]ithout those releases, pursuant to prior discussions with the Court, the Mercer County Prosecutor's Office has not released any personalty, including jewelry." (*Id.*) (emphasis added). Not only does this solitary and benign letter not suggest any discriminatory intent, but it involves the Mercer County Prosecutor's Office—an entity dismissed from this case, with prejudice, more than five years ago. (*See* ECF No. 15.) Put simply, looking at the totality of the record on summary judgment, Plaintiff has provided no evidence of discrimination on the part of the Trenton Defendants to support her unsubstantiated allegations. Accordingly, summary judgment on Count Five in favor of the Trenton Defendants is appropriate.

### E. Wrongful Death and Survivorship

Finally, in Count One, Plaintiff asserts a claim against the Trenton Defendants for wrongful death and survivorship. To assert a cause of action for wrongful death, Plaintiff must assert "(1) that [Greenfield's] death was caused by a wrongful act, and (2) that [Greenfield] would have been able to maintain an action for damages had he survived." *Davis v. Twp. of Paulsboro*, 2005 U.S. Dist. LEXIS 9881, at *57 (D.N.J. May 24, 2005) (citing *Miller v. Estate of Sperling*, 766 A.2d 738, 741 (N.J. 2001)). Given that Plaintiff has not provided any evidence that the Trenton Defendants either directly caused or contributed to Greenfield's death, I find that the Trenton Defendants are entitled to summary judgment as to Plaintiff's wrongful death and survivorship claim.

## IV. CONCLUSION

For the reasons set forth above, the Trenton Defendants' Motion for Summary Judgment is **GRANTED**.

19

Dated: June 28, 2022								/s/ Freda L. Wolfson
											Freda L. Wolfson
											U.S. Chief District Judge